UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

CHARLES DANIELS,                              :

                Petitioner,          :          **REPORT AND
RECOMMENDATION
TO THE HONORABLE
BARBARA S. JONES**

     -against-                            :

JAMES CONWAY, Superintendent,       :
Attica Correctional Facility,                        06 Civ. 11457 (BSJ)(FM)

                      :

              Respondent.
---------------------------------------------------------x

| |
|---|
| USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: <u>1/15/2009</u>_____ |

**FRANK MAAS,** United States Magistrate Judge.

I.    <u>Introduction</u>

        Petitioner Charles Daniels

("Daniels") brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254 ("Section

2254") to challenge an enhanced prison sentence imposed by Justice Ronald A. Zweibel

under New York's persistent felony offender ("PFO") statute, N.Y. Penal Law ("PL") §

70.10, following his conviction in Supreme Court, New York County, on seven felony

counts.  Daniels contends that he was denied a jury trial and due process, in violation of

the Sixth and Fourteenth Amendments to the United States Constitution, because Justice

Zweibel enhanced his sentence based on facts not found beyond a reasonable doubt by the

trial jury.  For the reasons set forth below, Daniels' petition should be denied.

II.    Background

    A.    Underlying Incident

        In the early morning hours of July 17, 1999, Daniels and Jazzmond Foy ("Foy") forced two students, Alison Fischer ("Fischer") and James Wolf ("Wolf"), into Wolf's apartment at 113 East 19th Street using an imitation pistol.  (Resp't's Mem. at 2-3, 5; Pet'r's Mem. at 3).[1]  Once inside, Daniels and Foy ransacked the apartment and bound Fischer and Wolf using belts and neckties.  (Resp't's Mem. at 3, Pet'r's Mem. at 3-4). Both men proceeded to rape Fischer.  (Resp't's Mem. at 4; Pet'r's Mem. at 4).  Wolf managed to escape and called the police.  (Resp't's Mem. at 4).  Police officers apprehended Daniels on 20th Street and Park Avenue South.  (Id. at 5).  During a cursory search of Daniels, the police officers found a "gameboy" device, a watch, a credit card, a credit card receipt, two cell phones, and money, all belonging to Wolf.  (Id.).

    B.    Trial and Verdict

        On June 14, 2000, the jury found both Daniels and Foy guilty of two counts of Rape in the First Degree, four counts of Robbery in the Second Degree, one count of Burglary in the Second Degree, and one count of Sexual Abuse in the First Degree. (Pet'r's Mem. at 4, 11 n.4).  Rape in the First Degree is a Class B felony, which carries a maximum sentence of twenty-five years.  PL §§ 130.35, 70.02(3)(a).  Robbery in the

---

[1]    The complete trial transcript was not submitted to this Court for review.  (See Docket No. 10 (Supplemental Answer to Pet. For Writ of Habeas Corpus) ¶ 3).  Accordingly, I have relied on the memoranda of law submitted by the Petitioner and Respondent to describe the underlying incident.

Second Degree and Burglary in the Second Degree are Class C felonies, for which the maximum possible sentence is fifteen years.  PL §§ 160.10, 140.25, 70.02(3)(b).   Sexual Abuse in the First Degree is a Class D felony, with a maximum sentence of seven years.  PL §§ 130.65, 70.02(3)(c).  Thus, the maximum sentence to which Daniels and Foy were exposed on any one count was twenty-five years in prison.

On June 20, 2000, however, the prosecutor filed a presentence statement arguing that Daniels should be sentenced as a PFO pursuant to PL § 70.10 because he previously had been convicted of two felonies for which a sentence of more than one year had been imposed.   (See Ex. A at 2-3).[2]  The statement detailed Daniels's fourteen-year history in the criminal justice system, including his prior arrests, convictions, and prison terms.  (Id. at 3-5).  The statement also noted that Daniels had exhibited a pattern of defying authority while in custody.  (Id. at 5-6).

C.   PFO Statute

The PFO statute provides that a defendant may be sentenced as if he had committed a Class A-I felony if the court (1) finds that the defendant has two or more prior felony convictions for which a prison term of more than one year was imposed, and (2) is of the opinion that "extended incarceration and life-time supervision will best serve the public interest" based on "the history and character of the defendant and the nature

---

[2]      "Ex." refers to the exhibits annexed to the Respondent's Appendix in Support of Answer to Petition for a Writ of Habeas Corpus.  "S." refers to the sentencing hearing minutes which are included in Exhibit A.

and circumstances of his criminal conduct." PL §§ 70.10(1)-(2).  The court must find

beyond a reasonable doubt through admissible evidence that the defendant is a PFO.

N.Y. Crim. Proc. Law ("CPL") § 400.20(5).  The decision that the defendant should be

sentenced as an A-1 felon may be based on any non-privileged evidence, regardless of

admissibility, but must be proved by a preponderance of the evidence.  Id.  Additionally,

when the court believes that enhanced sentencing "will best serve the public interest," it

must set forth the reasons for that opinion in the record.  PL § 70.10(2).[3]

---

[3]        The full text of PL § 70.10 reads as follows:

    1. Definition of persistent felony offender.

    (a) A persistent felony offender is a person, other than a persistent
    violent felony offender as defined in section 70.08, who stands
    convicted of a felony after having previously been convicted of two
    or more felonies, as provided in paragraphs (b) and (c) of this
    subdivision.

    (b) A previous felony conviction within the meaning of paragraph (a)
    of this subdivision is a conviction of a felony in this state, or of a
    crime in any other jurisdiction, provided:

    (i) that a sentence to a term of imprisonment in excess of one year, or
    a sentence to death, was imposed therefor; and

    (ii) that the defendant was imprisoned under sentence for such
    conviction prior to the commission of the present felony; and

    (iii) that the defendant was not pardoned on the ground of innocence;
    and

    (iv) that such conviction was for a felony offense other than persistent
    sexual abuse, as defined in section 130.53 of this chapter.

    (c) For the purpose of determining whether a person has two or more

(continued...)

4

D.    <u>Sentencing</u>

On September 28, 2000, Justice Zweibel held a hearing to determine whether Daniels should be sentenced as a PFO.  At the hearing, the Justice concluded that the prosecution had proved beyond a reasonable doubt by legally sufficient evidence that Daniels had been convicted of a felony and previously was convicted of two or more felonies.  (S. 10).  Justice Zweibel noted that he had reviewed and adopted the prosecution's pre-sentence statement pursuant to CPL § 400.20, and that "the history and character of the defendant, and the nature and circumstances of his criminal conduct indicate that an extended incarceration and lifetime supervision will best serve the public interest."  (<u>Id.</u> at 11).

───────────────────

[3](...continued)

        previous felony convictions, two or more convictions of crimes that were committed prior to the time the defendant was imprisoned under sentence for any of such convictions shall be deemed to be only one conviction.

        2. Authorized sentence.  When the court has found, pursuant to the provisions of the criminal procedure law, that a person is a persistent felony offender, and when it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment authorized by section 70.00, 70.02, 70.04 or 70.06 or subdivision five of section 70.80 for the crime of which such person presently stands convicted, may impose the sentence of imprisonment authorized by that section for a class A-I felony.  In such event the reasons for the court's opinion shall be set forth in the record.

5

The Justice thus adopted the findings of fact in the presentence statement, indicating that Daniels had a fourteen-year history of criminal activity involving narcotics and property offenses and that he refused to comply with terms of supervision while incarcerated.  (Id. at 12-17).  The Justice also noted that Daniels had shown "an escalating pattern of violence" in his prior offenses and that his current offense was a "vicious and violent crime that will surely leave psychological scars on the two young victims."  (Id. at 28-29).  Justice Zweibel determined that Daniels presented a "threat to the lives, safety, and security of the residents of every community in which he chooses to circulate," and that he had demonstrated by his conduct that he "is not fit to live freely in society."  (Id. at 29).  Accordingly, Justice Zweibel sentenced Daniels as a PFO to twenty-five years to life imprisonment on all counts, with several of the terms running consecutively, for an aggregate sentence of one hundred years to life.  (Id. at 31-32).[4]

E.      Subsequent Procedural History

1.      Direct Appeal

Daniels appealed his conviction to the Appellate Division, First Department, arguing, inter alia, that the procedure by which he was sentenced as a PFO was unconstitutional.  People v. Daniels, 764 N.Y.S.2d 624, 624 (1st Dep't 2003).  On

---

[4]      Foy was not sentenced as a PFO.  On September 29, 2000, he was sentenced to concurrent twenty-five-year terms on the rape counts, fifteen years on the robbery and burglary counts, and seven years on the sexual abuse count.  People v. Foy, 756 N.Y.S.2d 425 (1st Dep't 2003).  The judgment of conviction against Foy was unanimously affirmed by the Appellate Division, id., after which the Court of Appeals denied leave to appeal.  People v. Foy, 100 N.Y.2d 581 (2003) (table).

September 23, 2003, the Appellate Division unanimously affirmed Daniels' conviction,

finding his challenge to the PFO sentencing "unpreserved for appellate review and, in any

event, . . . without merit." Id.

On January 30, 2004, Judge George Bundy Smith granted Daniels

permission to appeal to the New York Court of Appeals. People v. Daniels, 1 N.Y.3d 596

(2004). Daniels argued before the Court of Appeals that his challenge to the PFO statute

could be reviewed, despite being unpreserved, because it concerned the "mode of

proceedings prescribed by law." (See Ex. B at 32-33). He further contended that his

sentencing pursuant to the PFO statute deprived him of his jury trial and due process

rights because the judge, rather than a jury, increased his sentence based on uncharged

facts that were determined by a mere preponderance of the evidence. (Id. at 12). In

particular, Daniels contended that the New York Court of Appeals' decision in People v.

Rosen, 96 N.Y.2d 329, which upheld the PFO statute as constitutional despite the

Supreme Court's decision in Appendi v. New Jersey, 530 U.S. 466 (2000), was

inconsistent with the Supreme Court's later holdings in Ring v. Arizona, 536 U.S. 584

(2002), and Blakely v. Washington, 542 U.S. 296 (2004). (Id. at 13-32).

On June 14, 2005, the Court of Appeals affirmed the order of the Appellate

Division. People v. Daniels, 5 N.Y.3d 738 (2005). The Court of Appeals did not decide

the issue of preservation, holding that Daniels' appeal would fail on the merits even if the

purported <u>Apprendi</u> violation could be raised as an unpreserved mode of proceedings

error.  (<u>Id.</u> (citing <u>People v. Rivera</u>, 5 N.Y.3d 61 (2005))).

    2.    <u>Habeas Petition</u>

On October 30, 2006, Daniels filed his habeas petition with the assistance

of counsel.  (<u>See</u> Docket No. 1 ("Petition" or "Pet.")).  In his Petition, Daniels claims that

he was "deprived of due process and his right to a jury trial because he received a

dramatically increased maximum sentence based on facts in addition to recidivism that

were found by a judge[,] rather than a jury, by a mere preponderance of the evidence."

(Pet. ¶ 12A (citing U.S. Const. Amends. VI, XIV).  Daniels contends that this judicial

fact-finding ran afoul of the Supreme Court's holdings in <u>Apprendi</u>, <u>Ring</u>, <u>Blakely</u>, and

<u>United States v. Booker</u>, 543 U.S. 220 (2005).  (Pet'r's Mem. at 3, 19-32).

Daniels further contends that the Second Circuit's decisions in <u>Brown v.

Greiner</u>, 409 F.3d 523 (2d Cir. 2005) ("Brown I") and <u>Brown v. Miller</u>, 451 F.3d 54 (2d

Cir. 2006) ("Brown II"), which upheld the constitutionality of the PFO statute, are not

controlling in his case because they were decided before <u>Blakely</u>.  (<u>Id.</u> at 18, 33-35).  He

asserts that <u>Blakely</u> "removed the last legitimate obstacles to recognition of the

incompatibility of New York's PFO provisions with the <u>Apprendi</u> line of cases."  (<u>Id.</u> at

35).  Finally, he argues that <u>Rivera</u>, the case upon which the Court of Appeals relied in

affirming his conviction, "misapprehend[ed] the nature of a fact-finding under the

<u>Apprendi</u> line of cases."  (<u>Id.</u> at 35-43).

II.     Discussion

    A.     Standard of Review

        A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court.  Herrera v. Collins, 506 U.S. 390, 401 (1993).  Rather, a state prisoner seeking habeas relief under Section 2254 must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petitioner therefore bears the burden of proving, by a preponderance of the evidence, that his rights have been violated.  Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

        Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides, in part, that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1) (emphasis added).  As the Second Circuit noted in Jones, the Supreme Court has "construed the amended statute so as to give independent meaning to 'contrary [to]' and 'unreasonable.'"  229 F.3d at 119.  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a

case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. This standard does not require that all reasonable jurists would agree that the state court was wrong. Id. at 409-10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Jones, 229 F.3d. at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

Section 2254(d)(2) also authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." To the extent that a habeas petition challenges factual findings, Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

"If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." Williams, 529 U.S. at 389.

B.      Procedural Bar

Before turning to the merits of Daniels' claim, the Court must determine whether it is procedurally barred.  A federal court is precluded from reviewing a claim if the state court's prior denial of it rested on an adequate and independent state ground.  See, e.g., Harris v. Reed, 489 U.S. 255, 262 (1989); Wainwright v. Sykes, 433 U.S. 72, 81 (1971).  A procedural default qualifies as such an adequate and independent state ground, Harris, 489 U.S. at 262, unless the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996).

In its decision, the Court of Appeals noted that Daniels had not preserved his Apprendi claim for appellate review, but held that "[e]ven if an Apprendi violation may be raised as an unpreserved mode of proceedings error, [Daniels] would not prevail on the merits."  Daniels, 5 N.Y.3d 738, 739 (internal citations omitted).  Accordingly, because the Court of Appeals did not expressly rely on a procedural default in denying Daniels' claim, its decision does not bar federal review.  Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810-11 ("When a state court uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,'" the claim is subject to federal review" because the state court has not "adequately indicated

11

that its judgment rests on a state procedural bar.")  The AEDPA deferential standard of review therefore is applicable.  See 28 U.S.C. § 2254(d).

C.    Merits

As Judge Lynch noted in Bailey v. Rivera, the Supreme Court "has never ruled on the constitutionality of the [PFO] statute."  07 Civ. 2181 (GEL), 2007 WL 3120904 (S.D.N.Y. Oct. 24, 2007).  To prevail in this proceeding, Daniels consequently must show that the New York Court of Appeals' decision constituted an "unreasonable application" of "clearly established" Supreme Court law.  Id.

Both the United States Court of Appeals for the Second Circuit and the New York Court of Appeals have twice held that the PFO statute does not run afoul of the Supreme Court's decision in Apprendi.  See Brown II, 451 F.3d at 59 (also reaching the same conclusion under Ring); Brown I, 409 F.3d at 535; Rivera, 5 N.Y.3d at 67; Rosen, 96 N.Y.2d at 335.  Daniels contends that Brown I, Brown II, and Rivera do not control his case because the Supreme Court's subsequent decision in Blakely mandates a different result.  (See Pet'r's Mem. at 18, 33-43).

1.    Blakely Debate

The correctness of Daniels' Blakely argument is presently under consideration by the Second Circuit in connection with the appeals in Washington v. Poole, No. 07-3949, Portalatin v. Graham, No. 07-1599, Morris v. Artus, No. 07-3588, and Phillips v. Artus, No. 06-3550, four cases which were argued together in April 2008.

12

See West v. Breslin, No. 06 Civ. 4167 (PKC), 2008 WL 110947, at *7 n.3 (S.D.N.Y. Jan. 2, 2008) (noting that the appeals "attracted considerable amicus participation"). In the first two cases, Judges Koeltl and Gleeson concluded that the PFO statute is unconstitutional in light of Blakely – the only judges to have so found. See Washington v. Poole, 507 F. Supp. 2d 342, 358 (S.D.N.Y. 2007); Portalatin v. Graham, 478 F. Supp. 2d 385, 406 (E.D.N.Y. 2007). In the third and fourth cases, Judges Sweet and Crotty found that the PFO statute is constitutional. Morris v. Artus, No. 06 Civ. 4095 (RWS), 2007 WL 2200699, at *10 (S.D.N.Y. July 30, 2007) ("As construed by . . . Rivera, the [PFO statute] is not contrary to nor an unreasonable application of federal law as established in Blakely."); Phillips v. Artus, No. 05 Civ. 7974 (PAC), 2006 WL 1867386, at *6 (S.D.N.Y. June 30, 2006) ("Blakely . . . did not materially change the analysis regarding judicial factfinding from that of Apprendi or Ring.").

Many other judges have concluded (both before and after Blakely) that the PFO statute is constitutional. See, e.g., West, 2008 WL 110947, at *8 (observing that there is no "valid basis for concluding that Blakely or Booker altered the rules of the road on prohibited judicial fact-finding"); Bailey, 2007 WL 3120904, at *8 n.4 (collecting six pre-Blakely habeas decisions upholding PFO sentences); Alston v. Woods, No. 04 Civ. 8017 (WHP) (GWG), 2005 WL 3312818, at *5 (S.D.N.Y. Dec. 8, 2005) (Gorenstein, Mag. J., Report and Rec.) ("[Blakely and other post-Apprendi cases do not] alter the effect of Brown [I] . . . [which] rested on the holding that the application of the [PFO] did

13

not involve factfinding at all.").[5]  To understand the contours of the debate, it is useful to

begin with a discussion of Apprendi and the cases applying it to the PFO statute.

    2.    Apprendi and its Progeny

    The petitioner in Apprendi challenged a New Jersey hate crime statute

which provided for an enhanced sentence if a crime was committed "with a purpose to

intimidate an individual or group of individuals because of race, color, gender, handicap,

religion, sexual orientation or ethnicity." Apprendi, 530 U.S. at 469 (quoting N.J. Stat.

Ann. § 2C:44-3(e)).  Reasoning that the increased sentence permissible in such

circumstances was "the functional equivalent of an element of a greater offense," the

Supreme Court held that the Sixth Amendment required that a jury – not a judge – make

the factual determination necessary to impose the greater sentence.  Id. at 494 n.19, 497.

As the Court explained, "[o]ther than the fact of a prior conviction, any fact that increases

the penalty for a crime beyond the prescribed statutory maximum must be submitted to a

jury, and proved beyond a reasonable doubt."  Id. at 490 (emphasis added); see also

Booker, 543 U.S. at 244 (reaffirming Apprendi).

---

[5]    As Judge Lynch noted in Bailey, Judge Gorenstein held in Alston that it was "unclear
'that Blakely was decided in time to be considered for the purposes of [petitioner's] claim,'
however, '[e]ven if [Blakely ] constitute[s] 'established Supreme Court law' for purposes of
undertaking habeas review, [it] would [not] permit granting of the writ.'"  Bailey, 2007 WL
3120904, at *8 (quoting Alston, 2005 WL 3312818, at *4) (alterations in original).  Interestingly,
on October 16, 2007, the Second Circuit dismissed Alston's appeal from the order adopting
Judge Gorenstein's Report and Recommendation, on the basis that he had not made a substantial
showing of the denial of a constitutional right.  Alston v. Woods, No. 07-1556 (2d Cir. Oct. 16,
2007).

14

Subsequently, in Rosen, the New York Court of Appeals considered whether the sentencing enhancement permitted under the PFO statute violates Apprendi. The court concluded that the statute requires a state court judge to engage in a two-step analysis. First, the judge must determine that the defendant previously was "convicted of two or more felonies for which a sentence of over one year was imposed." Rosen, 96 N.Y.2d at 335. Second, once a defendant is found to be a PFO, the judge must review the "defendant's history and character and the nature and circumstances of his criminal conduct" to decide whether to enhance the sentence. Id. at 335.

The Court of Appeals held that the first determination falls squarely within the Apprendi exception for fact-finding regarding prior convictions and is "the sole determinate of whether a defendant is subject to enhanced sentencing." Id. Turning to the second discretionary determination, the court concluded that a sentencing judge is only fulfilling the "traditional role" of "giving due consideration to agreed-upon factors" in order to determine "an appropriate sentence within the permissible statutory range." Id.[6] Since the trial judge's exercise of discretion at the second stage does not lead to any

---

[6]     In deciding the constitutionality of the PFO statute, the Court must limit its consideration of Supreme Court case law to decisions issued before Daniels' conviction became final. See Williams, 529 U.S. at 412. It nevertheless bears mention that earlier this week, the Supreme Court issued a decision regarding an Oregon statute which required sentences for multiple offenses to run concurrently unless a judge found certain statutorily-described facts. (Slip Op. at 3). In that case, the defendant had been convicted of six offenses arising out of two incidents, for which he was sentenced to consecutive terms totaling 340 months' imprisonment. Id. at 3-4. He contended that he had a Sixth Amendment right to have a jury, rather than a judge, make the factual findings necessary for the imposition of consecutive sentences. Id. at 4. In denying his

(continued...)

enhancement of the sentence beyond that which is otherwise applicable, the Rosen court

concluded that the PFO statute does not violate Apprendi.  Id.

　　　　　After the Rosen decision, the Supreme Court concluded in Ring that an

Arizona capital sentencing statute violated Apprendi.  Ring, 536 U.S. at 609.  The

Arizona statute directed the sentencing judge in a capital case to conduct a separate post-

trial hearing "to determine the presence or absence" of certain aggravating and mitigating

sentencing factors.  Id. at 592-93.  Among the statutory aggravators were a prior

conviction of a "serious offense," creating a grave risk of death to a person other than the

deceased in the course of a murder, committing the murder for pay, and committing the

murder "in an especially heinous, cruel or depraved manner."  Id. at 593 n.1 (citing Ariz.

Rev. Stat. Ann. § 13-703(G) (West Supp. 2001)).  In the absence of any finding of

---

[6](...continued)

claim, the Court looked to the animating principle behind Apprendi, which is "the preservation of
the jury's historic role as a bulwark between the State and the accused."  Id. at 6.  The Court
concluded that the decision to impose sentences consecutively is not within the jury's historical
function, but rather has been the prerogative of the state.  Id.  The Court further noted that trial
judges

　　　　　often find facts about the nature of the offense or character of the
　　　　　defendant in determining, for example, the length of supervised
　　　　　release . . . attendance at drug rehabilitation programs, or terms of
　　　　　community service . . . .  Intruding Apprendi's rule into these
　　　　　decisions on sentencing choices or accoutrements surely would cut
　　　　　the rule loose from its moorings.

Id. at 10 (emphasis added).

16

aggravating factors, the most severe sentence the defendant could receive was life imprisonment.  Id. at 592.

The Court reasoned that a judge's sentencing enhancement findings under the statute were, in essence, findings regarding the elements of the underlying offense because they could subject a defendant to greater punishment than would result from the jury's findings alone.  Id. at 609.  In light of the Sixth Amendment's jury trial guarantee, the Court held that defendants "are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment."  Id. at 589.

The Second Circuit addressed the constitutionality of the PFO statute for the first time in Brown I.  The court concluded that the New York Court of Appeals' interpretation of the PFO statute in Rosen was not an unreasonable application of existing federal law, stating:

> New York's persistent felony offender statute authorizes an enhanced sentence if: (1) a felony offender has two predicate felony convictions; and (2) the court "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest."  [PL] § 70.10.  The first determination clearly falls within Apprendi's "fact of a prior conviction" exception.  See Apprendi, 530 U.S. at 488-90. . . .
>
> As for the second determination, we do not believe the Court of Appeals applied Apprendi unreasonably in distinguishing this judicial finding from the type of fact-finding at issue in Apprendi.  The fact at issue in Apprendi was whether the defendant's crime was committed "with a purpose to intimidate . . . because of race, color, gender, handicap, religion,

17

sexual orientation or ethnicity." Id. at 468-69 (internal quotation marks omitted).  This fact was specifically enumerated in the statute as an essential element, or functional equivalent, that was necessary to sentence a defendant at the increased level.  The Supreme Court decisions preceding Apprendi similarly involved findings of specifically enumerated facts that were necessary to increase sentencing ranges.  For example, in Castillo v. United States, 530 U.S. 120 (2000), the defendant's exposure to a higher sentence depended on the type of firearm used or carried during his commission of a crime of violence.  In Jones v. United States, 526 U.S. 227 (1999), the statute called for a higher sentence if the crime resulted in "serious bodily injury."

The second determination to be made under New York's persistent felony offender statute is of a very different sort.  It is a vague, amorphous assessment of whether, in the court's "opinion," "extended incarceration and life-time supervision" of the defendant "will best serve the public interest."  See [PL] § 70.10(2). The New York Court of Appeals considered this exercise to be something quite different from the precise finding of a specific fact, as in the cases culminating in Apprendi.  The court stressed that unlike the specific factual finding of predicate felonies, which the court labeled "the sole determinant" of exposure to the enhanced sentence (and which is expressly excluded by the Supreme Court from the Apprendi rule), the other factor that determines whether the defendant will receive an enhanced sentence involves the sentencing court's fulfillment of "its traditional role – giving due consideration to agreed-upon factors – in determining an appropriate sentence within the permissible statutory range." Rosen, 96 N.Y.2d at 335.  We cannot say the New York Court of Appeals unreasonably applied Apprendi when it concluded that this second determination is something quite different from the fact-finding addressed in Apprendi and its predecessors.

Brown I, 409 F.3d at 534-35 (emphasis added).

Subsequently, in Rivera, decided only six days after Brown I, the New York

Court of Appeals reaffirmed its holding in Rosen.   As the court explained:

18

> We could have decided <u>Rosen</u> differently by reading [PL
> § 70.10 and CPL § 400.20] to require judicial factfinding as to
> the defendant's character and criminal acts <u>before</u> he became
> eligible for a persistent felony offender sentence. If we had
> construed the statutes to require the court to find additional facts
> about the defendant before imposing a recidivism sentence, the
> statutes would violate <u>Apprendi</u>.  But we did not read the law
> that way. Under our interpretation of the relevant statutes,
> defendants are eligible for persistent felony offender sentencing
> based <u>solely</u> on whether they had two prior felony convictions.
> Thus, as we held in <u>Rosen</u>, no further findings are required. This
> conclusion takes defendant's sentence outside the scope of the
> violations described in <u>Apprendi</u> and its progeny.

<u>Id.</u> at 67.  The <u>Rivera</u> court further concluded that the PFO statute required a state judge

to articulate the facts warranting the imposition of an enhanced sentence on a PFO to

facilitate the Appellate Division's review of such sentences "in the interest of justice," not

because the findings were a statutory prerequisite to sentence enhancement.  <u>Id.</u> at 69.

In Blakely, the Supreme Court considered whether a Washington statute

violated Apprendi by permitting a departure from a standard sentencing range if the judge

found "substantial and compelling reasons justifying an exceptional sentence."  542 U.S.

at 299, 301.  The petitioner had pleaded guilty to second-degree kidnapping, for which

the standard sentencing range would have been forty-nine to fifty-three months.  Id. at

299-300.  After hearing from the victim and other witnesses, the sentencing judge made

thirty-two findings of fact, pursuant to which he imposed a ninety-month sentence,

because the petitioner had engaged in "deliberate cruelty," one of the statutorily-

permissible grounds for an upward departure.  <u>Id.</u> at 299-300.  The State contended that

this enhanced sentence did not violate <u>Apprendi</u> because the statutory maximum that

Blakely faced was ten years – the maximum for a Class B felony such as second-degree

kidnapping – not fifty-three months.  <u>Id.</u> at 303.

       The Supreme Court rejected the State's argument, observing that the

"relevant 'statutory maximum' is not the maximum sentence a judge may impose after

finding additional facts, but the maximum [the judge] may impose <u>without</u> any additional

findings."  <u>Id.</u> at 303-04.  As the Court further explained in setting aside the sentence as

violative of the Sixth Amendment,

> [w]hether the judge's authority to impose an enhanced sentence
> depends on finding a specified fact (as in <u>Apprendi</u>), one of
> several specified facts (as in <u>Ring</u>), or <u>any</u> aggravating fact (as
> here), it remains the case that the jury's verdict alone does not
> authorize the sentence. The judge acquires that authority only
> upon finding some additional fact.

<u>Id.</u> at 305.

       Thereafter, the Second Circuit revisited the constitutionality of the PFO

statute in <u>Brown II</u>, a case involving another petitioner named Brown.  The court adhered

to its prior holding in <u>Brown I</u>, distinguishing the statutes in <u>Ring</u> and <u>Apprendi</u> from the

PFO statute on the ground that the former statutes impermissibly "required judges to find

specified facts (i.e., judicial factfinding of an element of the crime) in order to impose an

enhanced sentence."  <u>Brown II</u>, 451 F.3d at 59.  In the court's view, this was different

than the sort of "amorphous" determination required by "[the PFO] statute (i.e., a

determination of the appropriateness of enhanced sentencing)."  <u>Id.</u>  In its decision, the

Brown II court did not address Rivera or the impact of Blakely and Booker, its federal Sentencing Guidelines counterpart.  Id. at 59 n.3.

    3.    Effect of Blakely and Booker on Daniels' Claim

    The district judges who have held that the PFO statute is constitutional since Brown II conclude that Rosen and Rivera are reasonable applications of the Supreme Court's jurisprudence regarding sentence enhancements, and that Blakely and Booker do not mandate a different result.  See, e.g., West v. Breslin, 2008 WL 110947, at *8 (finding no "valid basis for concluding that Blakely or Booker altered the rules of the road on prohibited judicial fact finding); Bailey, 2007 WL 3120904, at *6 ("The New York [c]ourt's conclusion that the statute is consistent with Blakely and Booker was reasonable."); Morris, 2007 WL 2200699, at *9 ("Regardless of whether the distinction established by the Second Circuit in Brown I and Brown II is found to withstand Blakely, the New York Court of Appeals' interpretation of the statute in Rivera takes the statute out of the zone of Sixth Amendment violation.")

    The two district judges who have reached a contrary conclusion reject the interpretation of the PFO statute in Rosen and Rivera, pursuant to which prior convictions are held to be the sole determinant of eligibility for enhanced sentencing.  They contend that a defendant is not eligible for an enhanced sentence unless the sentencing judge finds as a factual matter both that the defendant has two qualifying prior felony convictions and that the public interest requires the imposition of a longer sentence.  Washington, 507 F.

Supp. 2d at 360 ("It is clear, even after the Rivera decision, that before a persistent felony sentence is imposed, the sentencing court must find two things."); Portalatin, 478 F. Supp. 2d at 405 ("Although Rivera casts those factfindings as essential to appellate review, rather than to the initial imposition of sentence, it nevertheless leaves them as a 'mandatory' part of the statutory scheme . . . . That feature of the scheme compels my conclusion [that the PFO statute violates the Sixth Amendment].") (quoting Rivera, 5 N.Y.3d at 69).  To reach this result, they necessarily find, as a preliminary matter, that Blakely fundamentally changed the legal landscape, thereby permitting them to reach a result different than the one required by the Second Circuit's decisions in Brown I and Brown II.  See Washington, 507 F. Supp. 2d at 350-51 ("[B]ecause the Court of Appeals for the Second Circuit did not consider the effect of either Blakely or Booker in either Brown I or Brown II, those decisions do not require the denial of the petitioner's Apprendi claim."); Portalatin, 478 F. Supp. 2d at 398 ("Rosen's holding that the factfindings required by § 70.10 . . . escape Sixth Amendment scrutiny because they fall within the traditional role of judges cannot be squared with Blakely.").

        The Court of Appeals' interpretation of the PFO statute in Rosen and Rivera admittedly may be somewhat strained.  Nonetheless, under the Court of Appeals' reading of the statute, the existence of two qualifying prior felony convictions is the only fact that need be found for a defendant to be eligible for enhanced sentencing.  While Blakely eliminated any distinctions among the kinds of facts that might give rise to a

22

judge's authority to impose an enhanced sentence, see Blakely, 542 U.S. at 305 (whether judge must find a specified fact, several specified facts, or any aggravating facts is immaterial if jury's verdict alone does not authorize the sentence), the PFO statute, as interpreted by the Court of Appeals, permits sentencing enhancement on the basis of two prior felony convictions alone.  Were the second-prong considerations required triggers for enhanced sentencing eligibility, then Blakely would require them to be found by a jury rather than a judge.  Instead, the PFO statute's "statutory maximum" of life imprisonment is triggered only by a finding of prior convictions, and the judge's authority to enhance sentencing springs solely from this finding.  See Morris, 2007 WL 2200699, at *8 ("[T]he Second Circuit has concluded that the second prong of the [PFO statute] does not constitute a factfinding for Apprendi purposes, and there is nothing in the holding of Blakely to alter this view.").

Indeed, as Judge Lynch noted in Bailey, even Judge Gleeson concedes in Portalatin that the New York legislature could constitutionally have subjected all recidivist felons to the possibility of life imprisonment based solely on the fact that they had two prior felony convictions and could further have directed sentencing courts to consider the history and characteristics of a defendant and the nature and circumstances of his criminal conduct in the course of deciding whether to impose such an extended sentence in the exercise of their discretion.  Id. at *7 (citing Portalatin, 478 F. Supp. 2d at 407).  Judge Gleeson further concedes that "[f]rom the perspective of the defendant being

23

sentenced, [such] a sentencing scheme . . . might be indistinguishable from the one currently in place." Id. at *8 (quoting Portalatin, 478 F. Supp. 2d at 407). As Judge Lynch observed in Bailey, the New York Court of Appeals has, in effect, created this indistinguishable scheme through its decisions in Rosen and Rivera. Accordingly, the Court of Appeals' interpretation of the statute creates a sentencing scheme that passes constitutional muster. Id.; see also West, 2008 WL 110947, at *7 (Castel, J., "agree[ing] with the holding and analysis of Bailey").

IV.   Conclusion

Justice Zweibel properly exercised his discretion to sentence Daniels, a career criminal, as an A-I felon after making the preliminary determination that he qualified as a PFO. For this reason, the Petition should be denied.

V.   Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Barbara S. Jones, United States District Judge, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, NY 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge

Jones.  Any failure to file timely objections will result in a waiver of those objections for purposes of appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).

Dated:        New York, New York
              January 15, 2009

                                        _____
                                        FRANK MAAS
                                        United States Magistrate Judge


Copies to:

Richard Joselson, Esq.
Legal Aid Society
Fax: (212) 577-3523

Mark Dwyer
Assistant District Attorney
Fax: (212) 335-9288